O

# United States District Court
# Central District of California

PIERRE OSAMA ZARIF HANNA,

        Plaintiff,

    v.

ERNESTO SANTACRUZ JR. et al.,

        Defendants.

Case № 5:26-cv-00267-ODW (KSx)

**ORDER DENYING *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER [5]**

## I.      INTRODUCTION

Petitioner Pierre Osama Zarif Hanna brings this petition for a writ of habeas corpus against Respondents Ernesto Santacruz, Jr., Acting Director of Los Angeles Field Office of Immigration and Customs Enforcement ("ICE"); Todd M. Lyons, ICE Acting Director; James Janecka, Warden of ICE Adelanto; Kristi Noem, Secretary of U.S. Department of Homeland Security ("DHS"); and Pamela Bondi, U.S. Attorney General. (Pet. ¶¶ 8–13, Dkt. No. 1.) Petitioner also moves *ex parte* for an order prohibiting Respondents from removing him from the United States and enjoining Respondents from relocating him outside of California pending the adjudication of his petition. (Ex Parte Appl. ("TRO") 4, Dkt. No. 5.)[1] Respondents failed to oppose the request. For the reasons discussed below, the Court **DENIES** Petitioner's TRO.

---

[1] The Court cites to the CM/ECF pagination at the top of each page.

## II.    BACKGROUND

Petitioner is a citizen of Egypt.  (Pet. ¶ 26.)  On August 9, 2023, he entered the United States on a visitor visa.  (*Id.*)  Petitioner applied for asylum based on harm he suffered in Egypt due to his Coptic Christian faith.  (*Id.* ¶ 27.)

On December 31, 2025, law enforcement officers arrested Petitioner based on an alleged "misunderstanding" around Petitioner's girlfriend's building.  (*Id.* ¶ 28.) That day, Petitioner was attending a social gathering when a fight broke out.  (TRO 5.) Petitioner was not involved in the altercation and was attempting to comfort his girlfriend when law enforcement officers arrived at the scene.  (*Id.*)  Officers then arrested Petitioner on charges of resisting arrest.  (Pet. ¶ 28.)  Petitioner has no prior criminal record.  (*Id.* ¶ 30.)  He is not a flight risk and possesses good moral character. (*Id.* ¶ 31.)  Prior to his detention, Petitioner was gainfully employed.  (*Id.* ¶ 32.)

Based on these allegations, on January 21, 2026, Petitioner filed a Petition for Writ of Habeas Corpus alleging that his detention violates his due process rights and various statutory protections.  (*Id.* ¶¶ 34–60.)  On January 26, 2026, Petitioner filed this Ex Parte Application for a Temporary Restraining Order.  (TRO.)  Petitioner requests that the Court order Respondents not to remove him to Egypt or another country and enjoin Respondents from relocating Petitioner outside of California or any other jurisdiction pending the adjudication of this habeas petition.  (*Id.* at 4.)

## III.    LEGAL STANDARD

A temporary restraining order ("TRO") is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008).  The standard for issuing a TRO is "substantially identical" to that for issuing a preliminary injunction.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Pursuant to Federal Rule of Civil Procedure ("Rule") 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b).  To obtain this relief, a plaintiff must establish the "*Winter*" factors:

(1) the plaintiff "is likely to succeed on the merits"; (2) the plaintiff "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [the plaintiff's] favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

## IV.      DISCUSSION

Under 28 U.S.C. § 2241(c)(3), district courts have the authority to grant writs of habeas corpus where a petitioner demonstrates that his detention violates "the Constitution or laws or treaties of the United States." *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (holding that § 2241 confers jurisdiction on federal courts to hear challenges to continued immigration-related detention).

Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." The Ninth Circuit made clear that § 1252(g) strips district courts of jurisdiction over claims that challenge the decision to execute a removal order, notwithstanding pending applications for relief. *See Rauda v. Jennings*, 55 F. 4th 773, 778 (9th Cir. 2022).

Petitioner seeks to enjoin Respondents from removing him from the United States to Egypt of another country. (TRO 4.) As framed, Petitioner's requested relief falls within § 1252(g)'s jurisdictional bar because Petitioner asks the Court to restrain the government from executing a removal order. *See Rauda*, 55 F. 4th at 778 (holding that § 1252(g) bars any challenge to the discretionary decision to execute a removal order.). The Court that finds § 1252(g) bars Petitioner's challenge from judicial review. However, even if the Court possessed jurisdiction to review Petitioner's TRO, the Court **DENIES** the TRO for independent reasons as discussed below.

## A.    Likelihood of Success on the Merits

Petitioner briefly argues that he is likely to succeed on the merits of his claim because his continued detention violates his constitutional rights.  (TRO 9.)

Federal immigration law requires that, once an order of removal order becomes final, the government must "remove the alien from the United States within a period of 90 days."   8 U.S.C. § 1231(a)(1)(A).   During this initial "removal period," the government "shall detain the alien."  *Id.* § 1231(a)(2).  However, under § 1231(a)(6), the government may detain aliens for more than ninety days if they have been ordered removed due to criminal convictions.  In *Zadvydas*, the Supreme Court addressed how long an alien may be detained pursuant to § 1231(a)(6).  First, the Supreme Court held that the government does not have the power to "hold indefinitely in confinement an alien ordered removed."  *Zadvydas*, 533 U.S. at 697.  Second, the Supreme Court established that a period of detention of six months is "presumptively reasonable."  *Id.* at 701.  After six months, if "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.*

Petitioner contends that he is likely to prevail on the merits of his *Zadvydas* claim because he is being detained for an unreasonable length of time without a showing that his removal is likely.  (TRO 9.)  He argues that because his asylum application is still pending in the immigration court, Respondents will continue to detain him until his asylum hearing on May 8, 2026.  (*Id.*)  Petitioner thus argues that Respondents will detain him for another 100 days, in violation of his constitutional and statutory rights, if the Court denies his TRO.  (*Id.*)

Respondents detained Petitioner on December 31, 2025, (TRO 5), which means that Petitioner has been detained for twenty-six days as of the date he filed the TRO.  A detention period shorter than six months is "presumptively reasonable," *see Zadvydas*, 533 U.S. at 680, and "within the six-month period, 'the petitioner must claim and *prove* . . . that his removal is not reasonably foreseeable' to overcome the

presumption," *Ndandu v. Noem*, No. 3:25-cv-02939-RBM-MSB, 2026 WL 25848, at *4 (S.D. Cal. Jan. 5, 2026).

First, Petitioner cannot show that his detention exceeds the ninety-days statutory removal period. 8 U.S.C. § 1231(a)(1)(A). As Petitioner "is not being held past his ninety-day removal period, *Zadvydas* does not directly apply to his situation." *Kumar v. Gonzales*, 555 F. Supp. 2d 1061, 1064 (N.D. Cal. 2008). Second, even if the Court were to find that *Zadvydas* applies to Petitioner's claim, *Zadvydas* is not forward-looking. Any detention period shorter than six months is "presumptively reasonable," *Zadvydas*, 533 U.S. at 680, and Petitioner's contention that he will remain detained until his asylum hearing does not overcome this presumption, (*see* TRO 9). Furthermore, Petitioner's contention that he "could be detained over one year pending any appeal," (*id.*), still fails to establish that his removal is unlikely in the reasonably foreseeable future. Specifically, Petitioner fails to allege that his order of removal is final or that Respondents are not in possession of valid travel documents for Petitioner, such that there is no "significant likelihood of [his] removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. Thus, the first *Winter* factor weighs against injunctive relief because Petitioner fails to show that he is likely to prevail on the merits of his *Zadvydas* claim.

The first *Winter* factor "is a threshold inquiry and is the most important factor" in any motion for injunctive relief. *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). Thus, the Court "need not consider the other factors" where the first factor is not met. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). This "holds especially true" where, as here, a petitioner seeks injunctive relief "because of an alleged constitutional violation." *Id.* at 1042. As Petitioner fails to show that he is likely to prevail on his *Zadvydas* claim, the Court concludes that Petitioner fails to meet his burden in establishing that he is entitled to temporary injunctive relief.

## V.    CONCLUSION

For the reasons discussed above, the Court **DENIES** the TRO.  (Dkt. No. 5.)

**IT IS SO ORDERED.**

January 29, 2026

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**